## Louis Sievers
### v.
## James F. Griffin et al.

1. Broker—Commissions.—A broker, before he is entitled to commissions, must furnish a purchaser who is ready, willing and able to complete the purchase on the terms proposed.

2. When broker entitled to commissions.—Where by agreement with the owner, plaintiffs were to *sell* the property, or receive no commissions, and an agent of the purchaser seeing plaintiffs' advertisement of the property, went to them and had an interview, but the principal for whom he was acting was not disclosed, and this interview was not communicated to the owner, and another agent of the purchaser after learning from sources other than the plaintiffs who was the owner, negotiated with him directly for the property, and the owner, in ignorance of the interview with plaintiffs, made the sale himself. *Held*, that plaintiffs were not entitled to commissions. The broker must be instrumental in introducing the buyer and seller to each other. Merely being instrumental in putting the purchaser on the track of the property does not amount to furnishing a purchaser to the vendor.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding. Opinion filed December 21, 1883.

Mr. E. M. Haines, for appellant; that where a broker finds a purchaser but fails to report such fact to the principal, and the sale is completed by a second broker before notice is given to the principal by the first broker, the latter is not entitled to commissions, cited Tinges v. Moale, 25 Mo. 480; Chandler v. Sutton, 5 Daly, 112.

Messrs. E. & A. VAN BUREN, for appellees; that the evidence sustains the judgment, cited Rees v. Spruance, 45 Ill. 308.

BAILEY, J. This was an action of assumpsit, brought by Griffin & Dwight against Sievers, to recover commissions upon a sale of certain real estate of the defendant. A trial being had before the court without a jury, the issues were found for the plaintiffs, and their damages assessed at $170, for which sum and costs the plaintiffs had judgment.

The plaintiffs, as it appears, are real estate brokers, and the defendant, being the owner of a certain lot in the city of Chicago, employed the plaintiffs to sell it. The contract or arrangement by which the lot was placed in the plaintiffs' hands for sale, was made by the defendant and Griffin, and while there is some conflict in the evidence as to some of the attendant circumstances, the testimony of these two witnesses as to the terms of the contract itself, so far as material in this case, is not essentially inharmonious.

Griffin testifies that the defendant came to his office and wished him to sell the lot, and gave him a description of it; that on going to see it, he found on it several boards, placed there by other real estate firms, advertising it for sale, and that he then told the defendant that the plaintiffs could not take hold of the property or sell it, unless those boards were removed, and the parties who placed them there notified; that the defendant thereupon agreed to have said boards removed, which was afterward done; that an agreement was then made that the plaintiffs should undertake to sell the lot, and that their commissions should be two per cent. He admits, however, on cross-examination, that the agreement was that if they did not sell the property, they should ask no commissions.

The defendant testifies that prior to any negotiations with the plaintiffs, he had placed the lot in the hands of several other real estate firms for sale; that an employe of the plaintiffs came to him and asked him if he would sell the lot; that he replied that he had it in the hands of several parties already, and did not wish to give it to any others; that shortly after-

ward he received a postal card from the plaintiffs, asking him to call at their office; that he called as requested, and had an interview with Griffin, in which he told Griffin that he had already placed the property in the hands of several parties for sale, and that the plaintiffs might also undertake to sell it if they wanted to, but that whoever sold it should get the commissions; that he then gave Griffin a description of the property, and that Griffin then requested him to sign a written contract, which he declined to do for the reason that contracts with other parties were outstanding, and that he would not sign any more, repeating the proposition that whoever sold the property should get the commissions, to which Griffin assented.

The plaintiffs afterward advertised the property for sale, and one Wilson, a freight agent of the Chicago, Milwaukee and St. Paul Railway Company, seeing one of said advertisements, called the attention of the superintendent of said company to it, and at his direction called on the plaintiffs to ascertain the terms on which the lot could be purchased. Wilson, it seems, purposely concealed from the plaintiffs the fact that he was acting for the railway company, but told them that certain parties in Milwaukee wanted the lot for a manufacturing site. The plaintiffs gave Wilson the price at which it could be bought, but do not appear to have ascertained from him, or from any other source, the name or identity of the proposed purchaser, or to have made any inquiries on that subject, nor do they seem to have disclosed to Wilson the name of the owner of the lot, nor to have reported to the defendants in any way, the visit of Wilson to their office, or communicated to him the fact that some person, to them unknown, was seeking through Wilson to become a purchaser of the lot.

Wilson communicated the information received from the plaintiffs to the superintendent of the railway company, and he placed the matter in the hands of the company's attorney, with instructions to make the purchase. The attorney thereupon employed one Mitchell, a real estate broker, to conduct the negotiations, and he, after obtaining from the public rec-

ords the name of the owner, went directly to the defendant and bought the lot of him, and was paid a commission by the defendant. The plaintiffs on their part took no steps toward consummating the sale, but afterward seeing in a public newspaper a statement that a sale had been made to the railway company, demanded of the defendant that he pay them commissions therefor, and on his refusal brought this suit.

We are of the opinion that the finding and judgment are unsupported by the evidence. Even if the plaintiffs had been employed merely to find a purchaser, without any undertaking on their part to go on and consummate a sale, it can not be said that they so far performed the business of their employment as to entitle them to commissions. As said in Pratt v. Hotchkiss, 10 Bradwell, 603: "The true doctrine applicable to cases of this character is, that a broker, before he is entitled to commissions, must furnish a purchaser who is ready, willing and able to complete the purchase on the terms proposed."

Did the plaintiffs furnish or present a purchaser to the defendant? Who the party proposing to purchase was, they did not know, and took no pains to inquire. True, they had an interview with the purchaser's agent, but the principal for whom he was acting was not disclosed to them, and so could not have been communicated by them to the defendant, and even the fact that the interview had taken place was concealed from the defendant. Another agent of the purchaser, after learning from sources other than the plaintiffs who the owner of the property was, negotiated with him for it directly, and he, in ignorance of the fact that another agent of the same principal had been to the plaintiffs to inquire about the property, made the sale himself.

It can not then be said that the plaintiffs presented the purchaser to the defendant. It is true the attention of the purchaser seems to have been first called to the property by an advertisement published by the plaintiffs, but merely being instrumental in putting a purchaser on the track of property, does not amount to furnishing or presenting the purchaser to the vendor. The buyer and seller must be in some way

brought together or into communication, before the broker has discharged the duties of his employment so as to entitle himself to his commissions.   In other words, he must be instrumental in introducing the buyer and seller to each other.

But the evidence clearly shows that by the agreement between the parties, the plaintiffs were to *sell* the property or receive no commission.   This is sworn to by the defendant and admitted by Griffin.   That the plaintiffs made the sale is not pretended.   It is clear then that, by the very terms of their contract, they are entitled to no commissions.

The judgment being against the evidence, it will be reversed, and the cause remanded.

Judgment reversed.