NATHAN MEARS

v.

HORATIO O. STONE ET AL.

*Sales—Real Property—Commissions—Recovery of.*

1. Where a land owner has placed his property in the hands of a real estate broker to be sold at a fixed price and for an agreed commission, both are bound to exercise the utmost good faith toward each other.

2. In an action brought to recover commissions alleged to have been earned upon a sale of real estate, this court holds, in view of the evidence, that the judgment for the plaintiffs can not stand.

[Opinion filed June 1, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding.

Nathan Mears, appellant, being the owner of valuable dock property in Chicago, went to appellees, who were real estate agents, and authorized them to sell it for $150,000, agreeing to pay them two and one-half per cent commission for making a sale for that sum. Appellees saw Mr. Peabody, and obtained from him an offer of $125,000; this Mr. Mears refused.

Mr. Bellows, one of the plaintiffs in the suit, testified that Mr. Peabody asked Mr. Mears if he would take $135,000; this Mr. Mears denies. The court found that on or about the 4th of April, 1890, H. O. Stone & Company introduced F. S. Peabody to the defendant, and negotiations were had which resulted in the defendant's giving a written option of purchase to F. S. Peabody for the property concerning the sale of which the controversy in this case arises, for the sum of $150,000, said option being limited to ten days, time being of the essence of the contract, and that prior to the expiration of the ten days said Peabody surren-

dered said option to the defendant and informed him that he could not buy the property or do anything with it; that said defendant believed the representations of the said Peabody to be true.

Very shortly after the expiration of the ten days mentioned in the option paper, Mr. Walker, a member of the real estate and brokerage firm of Walker, Larned & Moss, came to appellant and told him that he, Walker, could find a purchaser for the property at the sum of $135,000, but that if he did so, he should expect to be paid a commission of $5,000.

The court, upon questions of fact submitted to it, found that the said Walker did not disclose the name of the purchaser to said Mears, and said Mears took the said Walker to E. B. McCagg, his attorney, and placed the whole matter in his hands, authorizing him to make a sale for $135,000 if he found the purchaser satisfactory. That thereupon the said McCagg declined to make any contract of sale unless the purchaser's name was disclosed, and unless he was a man of responsibility; that thereupon Mr. Walter C. Larned was introduced as the purchaser; and said McCagg being satisfied as to the responsibility of the said Larned, prepared a contract of sale from the said defendant to the said Walter C. Larned for the sum of $135,000, which was executed by the said defendant and by said Larned; that at the time of the execution of said contract and the payment of the cash purchase money thereof, on May 16, 1890, both the said defendant and the said McCagg believed that the said Larned was the real purchaser, and had no suspicion that F. S. Peabody or anybody connected with him had any interest in the purchase.

The contract was made April 17, 1890; upon the same day $10,000 was deposited by Larned as earnest money. The title was examined by Mr. Herrick, between whom and Mr. McCagg there were frequent consultations as to it. On May 16th, $25,000 additional money was paid, making the $35,000 cash payment stipulated in the contract; and at this time Mr. Mears agreed to at any time within thirty-five

days, execute to such person as Larned or his assigns might designate, a good and sufficient deed of the property; and certain modifications in the agreement, as to the payment of the remainder of the purchase price, were made.

Mr. Larned testifies that he purchased the property in good faith from Mr. Mears; that he never heard of the Peabody Coal Company before the contract was signed, and not until a long time afterward; that when he purchased it, he did not know whether he would own it individually, or would subsequently transfer it to somebody else. That later the consideration for the contract was paid by the Peabody Coal Company. Mr. Mears testified that after the option was surrendered he had a long talk with Mr. Peabody, who said that he could not do anything more; that he might have succeeded if the price had been $120,000 or $125,000. Larned assigned his contract to the Peabody Coal Company; the assignment is dated June 3, 1890, and on the same day a deed was made by Mears to the coal company.

May 26, 1890, appellees wrote to Mr. Mears as follows:

" Dear Sir : We notice that you have effected a sale of the dock property to the Peabody Coal Company. We will, of course, expect a commission on this sale, and take occasion to so notify you because you informed us that you had sold it to parties who had no connection with the Peabody interests. If we are in error kindly set us right at once. You have perhaps already protected our interest in the deal."

Mr. McCagg, on May 27th, replied as follows: " Mr. Nathan Mears has handed me yours of yesterday, asking me to reply to it, as I have had in hand all the negotiations respecting the sale of his dock property. The sale which he hopes to make, which is not as yet fully consummated, is made to Mr. Walter C. Larned without the slightest idea on his part, when he made the contract of sale, that the Peabody people had any interest in the purchase, nor can they have unless they obtain an assignment from Mr. Larned. The sale, if it is one, was made by Mr. Walker and not through your house."

A jury having been waived, the court held, upon propositions of law submitted, that although Mears might have in good faith sold the property to Larned and made a contract with him, believing him to be the real purchaser, and might have been bound under his contract to convey to said Larned or his assigns, yet if he, Mears, before the consummation of the contract was notified that the Peabody Coal Company was the party to whom plaintiffs had attempted to sell the property, then the plaintiffs were entitled to recover commissions for the sale made; and found the issues for the plaintiffs, assessing their damages at $3,375.

Messrs. LYMAN & JACKSON, for appellant.

Mr. EDWARD R. JEWETT, for appellees.

WATERMAN, P. J.   Appellant having placed his property in the hands of appellees to sell at a fixed price, and for an agreed commission, he and appellees were bound to exercise the utmost good faith toward each other. Appellees were employed to sell at the price of $150,000; they were not engaged to sell for $135,000, and if any efforts were by them made to find a purchaser at the last named price, they can hardly be considered as work done in pursuance of the authority given to them.

They did not and do not claim to have found a purchaser at $150,000, and no sale was made for that sum. The position of appellees is that they introduced appellant to Mr. Peabody and endeavored to sell the property to him; that appellant sold to Larned for $135,000, knowing, or having reason to know, that he was purchasing for Peabody. Appellees were not employed to merely introduce to appellant somebody who might upon some terms become a purchaser. It was not for such service that a commission was to be paid them.

If, having introduced appellant to Mr. Peabody, appellant had himself negotiated a sale to that gentleman at $150,000, it might well be found that appellees were the moving cause

of such sale; or if, being so introduced, Mr. Peabody had purchased of appellant upon terms substantially like those given to appellees; or if it were shown that appellant, in himself negotiating and closing a sale upon terms variant from those given to appellees, had been guilty of bad faith toward them, appellees might, as the moving cause of the sale, been held to be entitled to the commissions agreed upon, or to a reasonable sum for the work and labor by them done. Pickett v. Badger, 1 C. B. N. S. 206; Topping v. Healy, 3 F. & F. 325; Simpson v. Lamb, 17 C. B. 603.

Appellees were employed to do a certain thing, viz., sell the property for $150,000; they were to be paid for this a certain sum, viz., two and one-half per cent.; if they had in five minutes accomplished the undertaking they would have been entitled to the sum of $3,750; if they did not succeed they are not entitled to anything, unless the defendant, by some act of his, prevented their success. Tombs v. Alexander, 10 Mass. 255; Kerfoot v. Steele, 113 Ill. 610; Gillespie v. Wilder, 99 Mass. 170.

Having introduced Mr. Peabody and he having declined to purchase, there must be some period of time at which appellant might deal with another broker who thought himself able to sell to Mr. Peabody. Appellees did not, by the beginning of negotiations with Mr. Peabody, terminating in his refusal to buy, acquire a lien upon any disposition he might thereafter come into to purchase the property. The point of time at which another broker might be dealt with by appellant was when Mr. Peabody surrendered his option and declined to have anything further to do with the matter. So far as appears, some time after this, Mr. Walker took him up and effected a sale to the Peabody Coal Co., which is said to be the same thing as a sale to Mr. Peabody. There is no evidence that appellees were the procuring cause of the sale to Mr. Peabody; on the contrary, appellees, having procured for him an option, the court specially found that Mr. Peabody surrendered his option and informed appellant that he, Peabody, could not buy the property or have anything to do with it.

There is no evidence that appellees induced him to change his mind. They were not, therefore, entitled to the stipulated commissions. Easp v. Cummins, 54 Penn. St. 394; Chandler v. Sutton, 5 Daly, 112; Wylie v. Marine Bank, 61 N. Y. 415; Lipe v. Ludewick, 14 Ill. App. 372; Sievers v. Griffin, 14 Ill. App. 63.

The court, in effect, found that appellant acted in perfect good faith. Its finding that in making the contract with Larned, appellant believed Larned to be the real purchaser, and had no suspicion that Peabody or anybody connected with him had any interest in the purchase, relieves appellant of all imputation of bad faith. Finding, as the court did as to the facts, that appellees did not make the sale, and that appellant sold to Larned supposing him to be the purchaser, appellants were not entitled to be paid the agreed commissions.

The judgment of the Superior Court will therefore be reversed and the cause remanded.

*Reversed and remanded.*