JOHN R. WIGGINS, SHERIFF AND EX OFFICIO ADMIN-
ISTRATOR OF THE ESTATE OF MARY A. STOKES,
DECEASED, *Plaintiff in Error,* v. SOLON G. WILSON
AND CLARENCE A. BOSWELL, PARTNERS UNDER THE
FIRM NAME OF WILSON & BOSWELL, *Defendants in
Error.*

REAL ESTATE BROKERS—COMMISSIONS OF—VARIANCE BETWEEN
ALLEGATA AND PROBATA—EVIDENCE—EMPLOYMENT TO FIND
A PURCHASER DISTINGUISHED FROM EMPLOYMENT TO EFFECT
A SALE.

I. There is a recognized distinction between the employment of
a broker to *find or procure a purchaser* for the property of an-
other and his employment to *effect a sale* of such property.
In the one case the broker finds the purchaser and produces
him to his principal, who negotiates and effects the sale with
such purchaser; in the other case the broker not only finds the
purchaser but negotiates the sale with him on the terms au-
thorized by his principal, leaving nothing for the principal to
do but execute the necessary conveyance of the title.

2. In actions at law evidence offered in support of an allegation
with which it appears to be variant should be excluded if
objected to. Where a pleading alleges an absolute promise or
agreement and the proof shows one that was contingent or
conditional the variance is fatal.

3. A broker employed *to sell*, as distinguished from a broker employed to *find a purchaser*, is not entitled to conpensation until he *effects a sale* or procures from his customer a binding contract of purchase within the terms of his authority.

4. A broker employed to *find a purchaser* to be entitled to conpensation must either *produce to the owner* a customer who is able, ready and willing to buy *on the terms prescribed by the owner*, or else take from the customer a binding contract of purchase within such prescribed terms.

5. An agent or broker to whom is given the exclusive right to sell a tract of land belonging to another cannot recover commissions when the owner effects the sale, unless he has *produced to such owner* a purchaser ready, able and willing to buy on the terms specified in his contract of employment.

6. Where a land-owner agrees with an agent to pay him a specified gross sum if he will procure a purchaser of a lot of land at a stipulated price, the agent cannot recover the sum agreed on as his commission without *procuring* and *producing to the owner* a purchaser able, ready and willing to pay such price; and, where negotiations by the agent with one who contemplates buying at some price are not concluded, and the same are voluntarily broken off by the customer, and he afterwards purchases the property directly from the owner at a less price the agent is not entitled to recover.

7. If an agent employed by the owner to *find a purchaser* for, or to *effect a sale* of, a tract of land knows that a customer found by him has the ability, and is ready and willing, to purchase the property at the price and on the terms that he is authorized to sell it, it is the duty of such agent promptly to notify his principal of such fact, then, after receiving such notice, if the principal sells to such customer at a less price and on different terms than those given to the agent the latter will be entitled to his commissions. But if the agent knows of the customer's ability, readiness and willingness to purchase the property at the price and on the terms named in his contract of employment and withholds such knowledge from his principal it amounts to bad faith with his principal which forfeits his right to any commissions out of a sale effected by the principal in ignorance of such facts.

Wiggins, Adm'r. v. Wilson, et al.—Opinion of Court.

This case was decided by Division B.

Writ of Error to the Circut Court for Polk County.

The facts in the case are decided in the opinion of the court.

*H. K. Olliphant* and *Price & Watson,* for plaintiff in error.

*Wilson & Boswell, in pro. per.*

TAYLOR, J.—The defendants in error sued the plaintiff's intestate during her life time in the circuit court of Polk county in assumpsit for the recovery of commmssions alleged to be due them as real estate agents or brokers for procuring a purchaser for her lands. She died pending the suit which was revived against her administrator, the plaintiff in error. The case was by agreement referred to and tried by a referee who found in favor of and rendered judgment for the plaintiffs below, and to have this judgment reviewed the defendant below brings the case here by writ of error.

There are twenty-seven assignments of error, but from the conclusions at which we have arrived after careful consideration of the pleadings and evidence with the objections and exceptions urged at the trial, it will be unnecessary to discuss more than two or three of them in order to completely dispose of the case presented here.

The declaration in the case was substantially as follows:

"The plaintiffs in the above styled cause, by Wilson & Wilson their attorneys, complain of the defendant Mary A. Stokes, for that the said defendant being a part owner of divers lands and tenements situated in town-

ships 26 and 27 south range 26 east, and in townships
26 south in ranges 24 and 25 east, and in townships 27
south in ranges 25 and 27 east in Polk county, Florida,
then and there in the county aforesaid on the 4th day of ·
March, A. D. 1901, employed the said plaintiffs to pro-
cure for the defendant a purchaser for said lands and
tenements at and for the price of eighty cents per acre;
that plaintiffs thereupon in the county and state aforesaid,
through their efforts in that behalf, found, procured
and produced a purchaser for said lands at the price so
agreed upon, whereupon the said purchasers, to-wit:
Hattie Drew, B. Drew, William Fletcher, John Fletcher
Sr., H. F. Fletcher and A. F. Fletcher did on or about
the 8th day of July, 1901, consummate the purchase of
said land, aggregating twenty thousand three hundred
and ninety-seven and 86-100 acres at the price aforesaid.
That the said defendant at the time of such employment
agreed with plaintiffs to pay them for their services in
this behalf a commission of five per cent. on all sums
of money received by plaintiffs as the purchase price of
said lands and tenements. That the sale of said lands
of the defendant was brought about and consummated
through the efforts of plaintiffs in that behalf. That
notwithstanding the said sale has so as aforesaid been
consummated yet the defendant has not paid to the plain-
tiffs their said commission amounting to the sum of·eight
hundred and fifteen 91-100 dollars, or any part thereof,
though often requested to do so. And for that whereas
the said defendant was on the 4th day of March, 1901,
justly indebted to the plaintiffs in the sum of $815.91
for work and labor and the services of the plaintiffs by
them before that time done and bestowed in and about
the business of the defendant at her request. All of
which several sums of money the defendant has promised
to pay on demand, yet the said the said defendant, though

requested has not paid the same or any part thereof to the plaintiffs, but refuses so to do, to the damage of the plaintiffs in the sum of $815.91, and, therefore, they bring their suit."

The original defendant plead as follows:

1st.   Never was indebted.

2nd.   That she did not promise as alleged.

The substituted defendant administrator besides adopting the above pleas of his intestate filed the following additional pleas:

1.   That it is untrue that the plaintiffs found, procured and produced a purchaser as alleged in the declaration.

2.   That the alleged sale was not made or induced by any efforts of the plaintiffs, and the defendant's intestate sold the said lands to the alleged purchasers without any knowledge that the said purchasers or any of them had been found by the plaintiffs.

Upon the issues thus made the trial was had.   At the trial to make out their case the plaintiffs offered in evidence the following letters from Messrs. Price & Price of Marianna, Florida, who, it is practically admitted, were the authorized agents and attorneys for Mary A. Stokes, the owner of the lands involved, and the original defendant in the cause:

"Marianna, Florida, Dec. 15, 1900.
Messrs. Wilson & Boswell,

Bartow, Florida.

Dear Sirs:—Your favor to Mrs. Stokes has been referred to us.   Replying will state Mrs. S. will sell property at one dollar per acre and pay com. at ten per cent. If you can make sale at these figures you are authorized to close, or we should be pleased to consider a counterproposition.   The property is now ready to be sold.

Yours truly,

PRICE & PRICE.

Marianna, Fla., 3-4, 1901.

Wilson & Boswell,

　　Bartow, Florida.

　　Dear Sirs:—We have just heard from Mrs. Stokes relative to the lands situated in South Florida. We are authorized by her to close trade on the 21,000 acre tract, being all of her lands except those at Haines City, at 80 cents per acre, 1-3 cash, 1-3 in November and 1-3 in 12 months from date of sale. Deferred payments to bear interest from date at 8 per cent. Purchaser to pay taxes now due upon the property. If you can close deal on these terms will be willing to pay 5 per cent commission as per your proposition. If you can close trade wire us and we will prepare deeds and forward them to you and procure necessary order of court to confirm sale.

　　We are, very truly yours,

　　　　　　　　　　　　PRICE & PRICE.

　　P. S. We have received another letter from Sands and Potter claiming they are the parties who have this deal on hand. You had better see them if this contention is correct and arrange matters."

　　　　　　　　　　"Marianna, Fla., 2-28, 1901.

Messrs. Wilson & Boswell,

　　Bartow, Fla.

　　Gentlemen:—We have received enclosed letter from Messrs. Sands & Potter, which is self explanatory. We know nothing relative to your contract with them in case of sale. If sale should be made in compliance with your last proposition we shall expect to pay only 5 per cent commission which will be paid to you and you will have to arrange matters*between yourselves. Please return us enclosed letter.

　　　　　　　　Yours very truly,

　　　　　　　　　　　PRICE & PRICE."

　　All of these letters were objected to by the defendant on the grounds: that they were irrelevant and immate-

rial, and were variant from the contract alleged in the declaration; and because there was no evidence establishing any authority to Price & Price to bind Mrs. Stokes, but such objections were overruled by the referee and all of said letters admitted in evidence, to which rulings exceptions were duly taken and they are assigned as error.

The referee erred in admitting these letters in evidence over the objections made thereto by the defendant. The contract alleged in the declaration was that the dedefendant absolutely and unconditionally employed the plaintiffs to procure a purchaser for said lands at and for the price of eighty cents per acre, and that the defendant unconditionally agreed to pay them for their services in this behalf a commission of five per cent. on all sums of money received by the plaintiffs as the purchase price of said lands, and that plaintiffs through their efforts found, procured and produced a purchaser for said lands at the price so agreed upon, etc. The letter from Price & Price to the plaintiffs dated Dec. 15th, 1900, was irrelevant and immaterial because it was nothing more than a tentative proposition to the plaintiffs that if they could sell the defendant's lands at one dollar per acre the defendant would pay them a commission of ten per cent., and inviting a counter-proposition. This letter had no tendency to prove the plaintiffs' alleged contract with the defendant, and was improperly admitted over the objections made thereto. The letter from Price & Price to the plaintiffs dated March 4th, 1901, which, according to the findings of the referee, contained the contract between the parties, shows on its face a contract materially and fatally variant from the contract alleged in the declaration. The contract alleged in the declaration is an absolute and unconditional employment of the plaintiffs by the defendant's intestate to *procure for her a purchaser* for her lands willing and

ready to pay the price for same of 80 cents per acre, without any mention of any other terms or conditions. The last named letter contains a *conditional* contract to the effect that *if* the plaintiffs can *close a deal or sale* of the 21,000 acres of land at 80 cents per acre, 1-3 cash, 1-3 in November and 1-3 in 12 months from date of sale, deferred payments to bear interest at 8 per cent. from date of sale, and the purchaser in addition to pay taxes then due upon the property, *then* the defendant's intestate would pay 5 per cent. commission.

The authorities recognize a distinction between the employment of a broker to find or *procure* a *purchaser* for the property of another, and the employment of a broker to *effect* and *close a sale* of such property. In the case the broker finds the purchaser and produces him to the property owner who negotiates and effects the sale with such purchaser, in the other case the broker not only finds the purchaser but negotiates the sale with him on the terms authorized by his principal, leaving nothing for the seller to do but execute the necessary transfers of the title to the property. The letter in question makes out a contract of the last named class, whereas the plaintiffs' declaration alleges a contract of the first named class. The contract embodied in the letter agreed to pay the commission therein named *upon the condition* that the plaintiffs should *close a sale* of the lands at the price and upon the terms particularly specified therein including the payment by the purchaser of past due taxes on the property. The declaration fails to allege these terms and conditions and fails to allege that the plaintiffs *closed a sale* of the lands to a purchaser upon the terms and conditions authorized in such letter, but simply alleges that they were employed to procure a purchaser willing to pay 80 cents per acre and that they had procured such purchaser.

23

In actions at law evidence offered in support of an allegation with which it appears to be variant should be excluded if objected to. 9 Cyc. p. 750; 22 Ency. Pl. & Pr., p. 632, and many cases there cited.

Where a pleading alleges an absolute promise or agreement and the proof shows one that was contingent or conditional the variance is fatal. 22 Ency. Pl. & Pr. p. 572, and numerous cases there cited; 9 Cyc. p. 752; Meniffe v. Higgins, 57 Ill. 50.

A broker employed *to sell* as distinguished from a broker employed to *find a purchaser* is not entitled to compensation until he effects a sale or procures from his customer a binding contract of purchase. Ormsby v. Graham, 123 Iowa 202, 98 N. W. Rep. 724. On the other hand a broker employed to *find a purchaser* must either produce to the owner a customer who is able, ready and willing to buy *on the terms prescribed by the owner,* or else take from the customer a binding contract of purchase. 19 Cyc. p. 255, and cases cited. "Generally if a broker has brought the parties together and as a result they conclude a contract, he is not deprived of his right to a commission by the fact that the contract so concluded differs in terms from the one which he was authorized to negotiate. Where for example the principal consummates a sale to a purchaser found by the broker, he is liable for the commission, although the sale is made at a smaller price than that originally proposed by him to the broker, unless the right to a commission is made conditional upon a sale at the price mentioned in the broker's authorization." 19 Cyc. p. 249 *et seq.,* and citations. An agent or broker to whom is given the exclusive right to sell a tract of land belonging to another cannot recover his commissions when the owner sells the land, unless he has produced a purchaser ready and willing to buy on the terms specified in his contract of employment. Waterman v. Boltinghouse, 82

Cal. 659, 23 Pac. Rep. 195; Cathcart v. Bacon, 47 Minn. 34, 49 N. W. Rep. 331; Blodgett v. Sioux City & St. P. Ry. Co., 63 Iowa 606, 19 N. W. Rep. 799; McGavock v. Woodlief, 20 How. (U. S.) 221, 61 U. S. L. Ed. 884; Wylie v. Marine Nat. Bank, 64 N. Y. 415; Babcock v. Merritt, 1 Colo. App. 84, 27 Pac. Rep. 882; Stephens v. Scott, 43 Kan. 285, 23 Pac. Rep. 555; Henderson v. Vincent, 84 Ala. 99, 4 South. Rep. 180; Illingsworth v. Slosson, 19 Ill. App. 612; Cullen v. Bell, 43 Minn. 226, 45 N. W. Rep. 428.    In the case last cited it is held that: "Where a land-owner agrees with an agent to pay him a specified gross sum if he will procure a purchaser of a lot of land at a stipulated price, the agent cannot recover the sum agreed on as his commission without procuring a purchaser able, ready and willing to pay such price; and where negotiations by the agent with one who contemplates buying at some price are not concluded, and the same are voluntarily broken off by the customer, and he afterwards purchases the same property directly from the owner at a less price the agent is not entitled to recover."    This enunciation of the Minnesota court is particularly applicable to the facts of the case in hand.    In this case the plaintiffs did nothing more than exhibit the lands to some of the parties who afterwards became the purchasers, furnishing them with maps or plats of the lands, and stating to them the terms on which they, the plaintiffs, were authorized to sell them.    The prospective purchasers or customers did not signify or express to them their willingness to buy on the terms and at the price named or on any other terms—but stated simply I think we are going to take that property, but will have to see further, but will communicate with you further in a day or two and let you know whether or not I will take it.    This was as near to a consummation of a sale to the proposed customer as the plaintiffs ever got, and at this juncture the proposed customer voluntarily

broke off negotiations with the plaintiffs and went directly to the attorneys of the defendant's intestate, Price & Price, at the distant town of Marianna, and there, without disclosing the fact that he had been negotiating with the plaintiffs at Bartow, Florida, purchased the property on materially different terms and at a materially smaller price than those on which the plaintiffs were authorized to sell. The plaintiffs claim that they wired to Price & Price that the party who closed the purchase from them was their customer, but Price & Price deny that they ever received any such telegram. However this may be it can make no difference with the plaintiffs' right to recover. Even accepting their theory of the case that their employment was to *procure a purchaser,* instead of to *effect a sale,* before they were entitled to recover they should have procured and *produced to the defendant* a customer who was able, ready and willing to buy the property at the price and on the terms named in their contract of employment. They did not do this, and could not have done so, according to their own testimony, with the party who actually purchased the property, inasmuch as that party had never signified or expressed to them his ability, readiness or willingness to take the property on the terms named in their contract of employment. The telegeam claimed by the plaintiffs to have been sent to the attorneys for the defendants intestate merely stated that the party who effects with such attorneys the purchase of the land was their customer and that they would claim their commissions upon a sale to him. If they knew or thought that this alleged customer of theirs had the ability and was ready and willing to purchase the property at the price and on the terms that they were authorized to sell it, it was their duty to promptly notify their principal of such fact; then, after receiving such notice, if the principal sold to such customer at a less price and on different terms than those

given to the plaintiffs they would be entitled to their commissions. But if the plaintiffs knew of the customer's ability, readiness and willingness to take the property at the price and on the terms named in their contract of employment, and withheld such knowledge from their principal it amounted to bad faith with their principal which forfeits their right to any commissions out of a sale effected by the principal in ignorance of such facts. Henderson v. Vincent, 84 Ala. 99, 4 South. Rep. 180; Soule v. Deering, 87 Me. 365, 32 Atl. Rep. 998; Mears v. Stone, 44 Ill. App. 444; McArthur v. Slauson, 53 Wis. 41, 9 N. W. Rep. 784; Baars v. Hyland, 65 Minn. 150, 67 N. W. Rep. 1148

Viewed from either standpoint, that of agents to *effect a sale,* or as agents to *procure a purchaser,* the proofs in the record before us do not authorize a recovery by the plaintiffs, and the referee erred in his findings in their favor on the facts and law of the case

For the errors found the judgment of the court below in said cause is hereby reversed at the cost of the appellees.

HOCKER and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.