## E. C. CARNEY v. JOHN HANCOCK OIL COMPANY.[1]

November 18, 1932.

No. 28,974.

*Leonard, Street & Deinard* and *Benjamin Segal,* for appellant.
*Fowler, Carlson, Furber & Johnson,* for respondent.

STONE, J.

Suing for a broker's commission, plaintiff encountered at the close of his own evidence an adversary motion for directed verdict, which was granted. He appeals from the order denying him a new trial.

Then the owner of a line of automobile filling stations in Minnesota, defendant in the autumn of 1929 transferred the whole property to Phillips Petroleum Company, taking in exchange stock in the latter corporation. We assume the transaction to have been so far a sale that, if not otherwise barred, plaintiff was entitled to

[1]Reported 245 N. W. 367.

a commission. He avers his employment by one Dixon representing defendant. Question is made as to the adequacy of plaintiff's proof to establish the authority of Dixon to bind defendant. That question also we pass, assuming that it should be resolved for plaintiff.

Plaintiff's agency, if any, was not exclusive. His evidence went to the extent of showing that he found the Phillips company as a possible purchaser. It did not show, or tend to show, that he *produced* that company to defendant. Plaintiff failed in his efforts to accomplish the latter rather essential object. Acting through associated brokers in Oklahoma, where the Phillips company has its general offices, he did bring defendant's property, and the fact that it was for sale, to the notice of Mr. Sands, vice president of the Phillips company, about April 1, 1929. To what extent, if at all, the latter was influenced by plaintiff's associates does not appear. There is nothing tangible to indicate that they made much of an impression. Plaintiff requested defendant to submit detailed information for the Phillips company. Defendant was willing to comply if so requested by a responsible executive of the Phillips company. The year before, 1928, defendant had attempted, but failed, to sell to the Phillips company. The information desired was expensive in preparation, and defendant justified in desiring first-hand evidence of the Phillips company's genuine interest. Plaintiff did not either procure or produce the desired evidence of his customer's interest. There, in effect, his evidence stops, except that defendant is said to have known that plaintiff was attempting to interest the Phillips company.

■ Plaintiff failed to prove that he produced his purchaser to defendant. By the distance there is between Minnesota and Oklahoma he failed to bring them together in the physical sense. He does not show that he or his associates induced correspondence between them. One Haterius, a Kansas City broker, in 1928 had conducted the negotiations which failed to sell defendant's property, but did sell that of a competitor to the Phillips company. In July, 1929, he opened with defendant the negotiations which in October resulted in the transfer of its whole business to the Phillips com-

pany. His commission was paid by the Phillips company, that being a condition imposed by defendant. There is in the record hearsay evidence that defendant got into touch with the Phillips company in the early summer of 1929 before Haterius appeared on the scene. But by the testimony of L. B. Hancock, then general manager of defendant, who conducted all the negotiations, it is shown conclusively that a letter of inquiry written by Haterius July 30, 1929, was the opening of the negotiation which resulted successfully in October and in which neither plaintiff nor associate of his had any part. There is no evidence that either defendant or Haterius was acting in bad faith or that the purpose of either was to circumvent plaintiff. If the Phillips company preferred to deal through Haterius to the exclusion of plaintiff, it was legally at liberty to do so, and defendant may not be penalized in consequence. A broker does not earn his commission simply by telling one who afterwards purchases that a property is for sale. He does not thereby fence off the whole deal as a private preserve for himself. It remains open range to his competitors; and if another broker is chosen by the customer as the efficient conduit of successful negotiation, the first is simply out of the money. Of course there must be good faith all around. But it is no evidence of bad faith that the customer, for some undisclosed reason personal to himself, rejects the tendered offers of broker number one and employs those of number two. Neither is the owner subjected to any imputation of bad faith because he does not repulse the approach of broker number two—particularly where, as here, broker number one has had ample opportunity to produce the purchaser.

Haterius, rather than plaintiff, seems to have been the procuring cause of the deal. But, in the absence of evidence that plaintiff was, it matters not who else intervened. Under such a contract as plaintiff claims, he could not earn his commission without the production to defendant of a purchaser. It is not enough that a broker finds the customer. He must bring the parties together so that through him his principal "has also found the purchaser." He must at least bring buyer and seller together. Baars v. Hyland, 65 Minn. 150, 151, 67 N. W. 1148; Armstrong v. Wann, 29 Minn.

126, 12 N. W. 345; Cullen v. Bell, 43 Minn. 226, 45 N. W. 428; Fosbroke v. National Exch. Bank, 176 Minn. 357, 223 N. W. 603. In contrast see Goldman v. Weisman, 123 Minn. 370, 372, 143 N. W. 983, 984, where the broker earned his commission because he not only found the purchaser but also produced him. In the language of the opinion, he had "advised defendants that his customers were ready to close on defendants' terms."

■ Naturally, there is a welter of decision law which, although in agreement on fundamentals, is hopelessly diverse in application. Annotations, 44 L. R. A. 321; 43 A. L. R. 1103. The result on business is frequently embarrassment and occasionally disaster, both for owners and brokers. The situation has come to such pass that owners, brokers, and counsel are frequently hard put to it so to conduct negotiation as to avoid spurious claims of brokers who simply thrust themselves into the transaction without invitation from anyone. Many a sale has been known to fail, the owner refusing to go on because in no other way could he make sure of avoiding litigation and the attempt to compel him to pay more than one commission.

There is unanimous agreement that in order to recover commission the broker must show himself the procuring cause of the sale. There is agreement also that in order to be the procuring cause he must have originated a course of action which, without break in continuity, results in reaching the goal of the employment, ordinarily sale or exchange of the principal's property. 6 Wd. & Phr. (3 ser.) 190-191; 3 id. (2 ser.) 1246; 6 id. (1 ser.) 5654. Beyond that disagreement arises.

Unless he contracts otherwise, an owner giving a broker a nonexclusive agency retains the right to sell either by himself or through other brokers, the only condition being that he must treat all with good faith and not interfere unduly with the negotiations of any. As already stated, in such a case the field is open to all. So the conclusion is irresistible that it is not enough that a plaintiff was merely "instrumental in putting a purchaser on the track of property." That "does not amount to furnishing or presenting the purchaser to the vendor." Sievers v. Griffin, 14 Ill. App. 63, 66.

So also in Whitcomb v. Bacon, 170 Mass. 479, 481, 49 N. E. 742, 64 A. S. R. 317, and in the other cases there cited, it was held that "a broker who does not have the exclusive sale of real estate does not become entitled to a commission merely by bringing the property to the attention of the person who finally buys it, but he must also show that his services were the efficient or effective means of bringing about the actual sale. * * * One may have found the customer who otherwise would not have been found, and yet the customer may refuse to conclude the bargain through his agency; and another broker may succeed where the first has failed. * * * But in such a case it is not enough to show that one of several causes stood in such a relation to the result that without it the result would not have happened, and that it was one cause amongst others which assisted or contributed in producing it. It becomes necessary to make a discrimination between the causes, and to ascertain which is the particular cause that can be called the efficient or effective one."

Again, in Ward v. Fletcher, 124 Mass. 224, 225, the same court, speaking through Chief Justice Gray, said in commenting on the same doctrine:

"One broker, who is unsuccessful in effecting a sale, does not become entitled to a commission upon the success of another."

Of like effect is Crowninshield v. Foster, 169 Mass. 237, 47 N. E. 879. For other cases see annotation 44 L. R. A. 333. Were the rule otherwise, no owner desiring to sell could safely employ more than one broker, for in the event of each of several being able to convince a jury that he had contributed anything to a sale, the principal might be held for as many commissions as there were brokers employed. The law contemplates no such absurdity.

True, many cases may be found which by implication, if not expressly, are in disagreement, if not with the rule at least with its application, as we make it in this case. But there is need for some degree of definition. We take the proper rule to be as already indicated, namely, that a broker cannot be held the producing cause of a sale where, as here, he merely brings the matter to the atten-

tion of a purchaser without going farther, does not even bring his customer into communication with the seller, and in the meantime another broker intervenes who succeeds where plaintiff fails, there being no showing of effort on the part of the successful broker or of the defendant improperly to interfere with plaintiff's efforts. In this case, as already indicated, plaintiff for some reason not disclosed by the record could not even get from the purchaser, Phillips Petroleum Company, a request that defendant furnish a description of its property and business, together with a statement indicating its profit-producing capacity. The implication is that they already had the needed information. If so, they had procured it through the 1928 negotiations, conducted by Haterius, successful as to that of a competitor, but unsuccessful as to defendant's property. The connection of Haterius with the transactions of 1928 may explain why it was he rather than plaintiff through whom the 1929 deal was consummated. It goes far to explain plaintiff's apparent failure to make the Phillips company his customer and produce it as such to defendant.

On the proposition we consider determinative, that, while plaintiff may have found, he did not produce the purchaser to defendant, the cases most stressed for plaintiff are distinguishable. Principal among them is Hubachek v. Hazzard, 83 Minn. 437, 440, 86 N. W. 426, 427. There the owner knew that the purchaser came to him "through the instrumentality" of the agent, and he was informed by the purchaser "that a commission would be due" the agent if a sale was consummated. The only fact question was whether after the purchaser made his initial offer he had dropped the matter and subsequently taken it up as a new and "independent deal." Similarly, in Llewellyn v. Olson, 169 Minn. 317, 319, 211 N. W. 161 (a case which we thought might well have been decided against the plaintiff broker on the facts) the determinative question was whether the employment was limited to an earlier trade "so that when that was turned down the agency ended." No question was made that plaintiff "had brought defendant into touch" with the other side. In Jaeger v. Glover, 89 Minn. 490, 491, 95 N. W.

311, 312, there was no question but that the sale "was largely effected by the introduction of Schomberg to defendant," that is, by the broker's actual bringing together of vendor and vendee. That fact is conspicuously absent here. In Steidl v. McClymonds, 90 Minn. 205, 95 N. W. 906, it was plain that plaintiff had brought vendor and vendee together. Not only that, he contributed substantial assistance in the negotiations resulting in the sale.

Giving the record every reasonable construction and implication in plaintiff's favor, we hold that he did not sustain the burden of proof which was his. It is not a question, as his counsel urge, "whether plaintiff's influence persisted," but whether it persisted to the end so as to become, not a mere incidental or contributing cause, but the efficient producing cause. In our view, the evidence rather negatives the persistence of any influence of plaintiff beyond the moment when his associates brought the matter to the attention of Mr. Sands, representing the Phillips company in Oklahoma. The record seems barren of anything to indicate that it went beyond that occasion. At best it is but matter of sheer conjecture whether plaintiff's influence continued to the end and had anything of substance to do with the consummation of the transaction.

Order affirmed.