**O. F. Weisjohn, Appellee, v. Mary F. Bell, Appellant. Chicago Title and Trust Company, Garnishee.**

**Gen. No. 42,092.**

 Heard in the first division of this court for the first district at the December term, 1941. Opinion filed September 9, 1942.

H. J. THAL, of Chicago, for appellant.

No appearance for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Defendant, Mary F. Bell, appeals from a judgment against her for $737.50, entered in a trial by the court of plaintiff's claim for a real estate broker's commission.

No brief has been filed in this court by the plaintiff. We are of the opinion the judgment cannot stand.

Defendant had inherited from her deceased husband, Hayden N. Bell, a farm in Lake county, Illinois. Plaintiff is a duly licensed real estate broker and, knowing that the farm was for sale, in September 1939 wrote to the defendant, who was an invalid in a hospital in Tennessee, saying that he had shown the farm to a party who had made an attractive offer; that this prospect had several farms in mind but plaintiff felt sure he could close a deal with him, and requesting an answer from defendant. To this defendant replied by letter saying in effect that while she was of the opinion the farm was worth more, she would consider an offer of $16,000 net, but would not sell for any less. A number of communications passed between the parties, the plaintiff trying to persuade her to sell for $15,000, but she repeatedly said that she would not take less than $16,000 net. In December 1939 plaintiff again wrote to defendant stating that his "prospect" was Mr. Kay, who refused to pay more than $15,000. In March 1940 plaintiff wrote to

her that Mr. Kay would still offer $15,000 and that this would be the last opportunity to make a deal with him unless "you have changed your mind."

The following April defendant telegraphed to plaintiff that she was preparing to close the deal with another party but would consider an offer of $15,500 cash, net, and requesting an immediate answer. She received no reply.

In the latter part of March or first part of April, Anthony Z. Clifford called at the office of R. L. Huszagh, another real estate broker working in the same general territory; Huszagh furnished him with a list of four or five farms, with prices, including defendant's farm; Clifford, after examination, said that he liked this farm and that he would pay $15,000 for it; Huszagh told him he did not think he could get it for this amount, as $16,000 was the lowest offer that had been made on it. Huszagh made a trip to Tennessee where defendant was residing but found that she was an invalid in a hospital; he then negotiated with members of her family, and an attorney representing her from the office of Robert N. Holt, an attorney at this, bar; an agreement was made to sell the property to Clifford for $14,750 net, the purchaser to pay all brokerage commissions; about the middle of April a deed to the property and the purchase money were deposited with the Chicago Title & Trust Company in escrow, and when the sale was completed Huszagh received a check from Clifford for his brokerage commissions.

Clifford was a brother-in-law of Kay and apparently at the trial plaintiff argued that this fact tended to support the claim that the purchaser was Kay and not Clifford. The evidence does not support this claim. Defendant did not know of any such relationship and Huszagh testified that at the time the deal was closed he did not know Kay and that as far as he knew the farm was purchased by Clifford.

Defendant never listed her farm for sale with plaintiff and did not employ him. Plaintiff approached defendant through letters, claiming to represent a buyer, but the offer which plaintiff suggested he might obtain was repeatedly declined by defendant. As was aptly said in *Watts v. Howard & Calkins,* 51 Ill. App. 243, where a broker was employed to sell real estate at a fixed price: "In endeavoring to persuade his principal to take less than the price at which he has authorized a sale, he is not so much serving his employer as a would-be purchaser."

Pertinent also is the opinion in *Morton v. Barney,* 140 Ill. App. 333, where a broker approached an owner through letters suggesting possible purchasers to whom he had offered the property; the owner subsequently disposed of the property elsewhere. It was held that it takes two persons to make a contract and the owner was under no obligation to respond to every letter of a real estate broker whom he had not employed. Much the same situation was involved in *Wilcox v. Andrews,* 150 Ill. App. 27, and *Bunn v. Smith,* 190 Ill. App. 530, and other cases. In *Carlson v. Nathan,* 43 Ill. App. 364, the broker was unable to secure an offer which the owner of the property would accept; more than a month thereafter the principals met and were introduced to each other by a banker, and after some time they finally agreed upon a trade. The court held that the broker was not entitled to a commission as his effort to procure terms which the owner would accept had failed. In *Sheppard v. Cade,* 227 Ill. App. 110, two brokers were employed; one of them failed in the negotiations with the prospective purchaser and he abandoned the attempt; the other broker subsequently succeeded, through his own efforts, in making a sale to the same person. It was held that the first broker was not entitled to commissions, citing Mechem on Agency, 2242, 2456–2459. And in *Watts v. Howard & Calkins,* above referred to, where the ulti-

mate purchaser was the same party first introduced by the broker, the court said, ''Surely there must be a period within which, after a party introduced by an agent has declined to purchase, the owner or another broker may treat the negotiations as at an end, and entirely new and independent solicitation begin. *Mears v. Stone,* 44 Ill. App. 444; *Carlson v. Nathan,* 43 Ill. App. 364; *Tombs v. Alexander,* 101 Mass. 255; *Earl v. Cummins,* 54 Pa. St. 394.''

The instant case is much more favorable to defendant, for here the purchaser was another party and not introduced to the owner by plaintiff.

Applying the conclusions in the cases above cited, to the facts before us, we hold that the trial court was in error in entering judgment against defendant, and it is reversed.

*Reversed.*

Matchett, P. J., and O'Connor, J., concur.