## JACKSON v. LENOX HOTEL CO.
### Civil Action No. 880.

United States District Court
D. Minnesota, Fifth Division.

Oct. 14, 1948.

Josiah E. Brill, of Brill, Grossman & Brill, all of Minneapolis, Minn., for plaintiff.

Holmes Mayall, Reavill & Neimeyer, of Duluth, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff commenced action to recover a broker's commission claimed to be due him in connection with the sale of defendant's Lenox Hotel in the City of Duluth, Minnesota. Defendant denied entering into the contract relied on by plaintiff, and further alleged that plaintiff failed to produce a purchaser acceptable to defendant, pursuant to the understanding of the parties.

The action was tried to the court and is predicated upon correspondence and conversations had between one Milos Basich, a broker in the employ of plaintiff, and E. R. Ribenack, president of defendant corporation. Later on other discussions were had between Basich and Ribenack in the presence of the latter's associate, one Albert H. Polinsky.

The case resolves itself into a controverted question of fact. It appears from the evidence that plaintiff was engaged in a hotel brokerage business. He learned in some undisclosed manner that defendant might be interested in disposing of its hotel and on or about April 21, 1947, plaintiff, by one Milos Basich, wrote Ribenack, saying, "We have a prospect very much interested in purchasing a hotel in Duluth * * *. If you are interested in selling at this time, I would be glad to come to Duluth * * *." Basich received no reply; hence, on or about April 28th, he wrote Ribenack a follow-up letter. On April 29th Ribenack wired plaintiff, "We will consider sale still open," which indicated third parties were being considered by defendant.

Ribenack, during the negotiations herein and at the time of trial, was an invalid, and could not recall the foregoing correspondence, but satisfied the court that the above quotations are substantially true. Basich

970

journeyed from Chicago to Duluth for the purpose of looking into the proposed deal, arriving on or about May 1st, and was shown through the hotel. Ribenack said, "There were other people looking at * * * [the hotel] at the same time." Basich made several visits, making notes and talking to Ribenack, with reference to which the latter testified as follows:

"He [Basich] said he had a client that was looking for a hotel property and I told him that if the client was satisfactory I would consider him; * * *. I had one price on it to everybody. * * * $135,000.00. * * * I was reserving my own apartment in the hotel in the sale. * * * I think I did telephone Mr. Basich. * * * In that conversation with Basich I told him if he came up here [to Duluth] he would have to take his chances with the rest of them; that I was very particular who I sold the hotel to; I was going to live * * * [in the hotel] and didn't want speculators or people that would transfer the deed or the contract over to somebody else that was unsatisfactory."

Basich, testifying for plaintiff, said Ribenack telephoned to him at Chicago on or about May 1st advising that he had a contract signed by a J. H. Hardy of Ashland, Wisconsin, which he was disinclined to execute, and went on to say, "If you have a party, bring them down and show the hotel. I will be waiting for you." Following Basich's arrival in Duluth he was shown the Hardy contract. The clients Basich produced on or about May 14th were a Mr. Lester Felsen and his associate, a Mr. Leonard U. Shapiro, the latter a lawyer and operator of real estate properties in Illinois and Wisconsin. Mr. Felsen was not called as a witness. Mr. Shapiro testified that, following a discussion of the terms with Ribenack, he said, "The deal is yours." ·

Ribenack's business associate, a Mr. Albert H. Polinsky, testifying for defendant, contradicts Basich, and Ribenack denies that he ever said, "The deal is yours." Polinsky is the person referred to in the testimony of Basich when he said "He [Ribenack] told me Mr. Polinsky * * * is his associate and he is advising and that he [Ribenack] wouldn't do anything without his [Polinsky's] advice." Polinsky advised against the sale to Felsen and Shapiro. On May 16, 1947, defendant sold the hotel to one John T. Cummerford of St. Paul, Minnesota, for $135,000.

As already indicated, the sole issue here is one of fact, and is succinctly stated in plaintiff's brief:

(a) Was there a contract of employment to pay an agreed commission upon the production of a purchaser ready, willing and able to buy hotel and equipment; and

(b) Did the plaintiff perform this agreement in accordance with its terms?

Throughout, the instant case is based upon testimony of witnesses with opposing views, who had a vital interest in its outcome. Ribenack was ill, and his memory was not the best. By the same token, the record demonstrates that the memory of Basich was faulty. He misplaced a letter he claims Polinsky wrote, and which he describes as of considerable import from the standpoint of the plaintiff. Polinsky cannot recall writing such a letter. The factual controversy is of such a nature as to require close scrutinizing and searching analysis of the record by the trier of the facts. Plaintiff has the burden of proof in this case, as in any similar action based on contract. Assuming that plaintiff was instrumental in obtaining a customer, must the court, on the record herein made, conclude that plaintiff produced a purchaser who measured up to the limitations placed on the proposed deal by defendant? Defendant contends the purchaser had to be acceptable to him, and comply with Ribenack's requirement of right of occupancy by him during his pleasure. Obviously, the matter was subject to further negotiations. There is nothing in the record suggesting exclusive agency in plaintiff. Defendant as owner retained the right to sell either by itself or by means of brokers other than plaintiff. The field in this respect was not limited to plaintiff alone.

The rule here applicable is the holding reached in Whitcomb et al. v. Bacon, 170 Mass. 479, 49 N.E. 742, 64 Am.

St.Rep. 317, where the court points out that:

"* * * a broker who does not have the exclusive sale of real estate does not become entitled to a commission merely by bringing the property to the attention of the person who finally buys it, but he must also show that his services were the efficient or effective means of bringing about the actual sale. * * * One may have found the customer, who otherwise would not have been found, and yet the customer may refuse to conclude the bargain through his agency, and another broker may succeed where the first has failed."

In Carney v. John Hancock Oil Co., 187 Minn. 293, 245 N.W. 367, 369, the court, referring to the last quotation, points to the reason for the rule, saying:

"Were the rule otherwise, no owner desiring to sell could safely employ more than one broker, for in the event of each of several being able to convince a jury that he had contributed anything to a sale, the principal might be held for as many commissions as there were brokers employed. The law contemplates no such absurdity."

Or, to put the matter another way, as stated by Mr. Justice Stone in the last-cited case:

"A broker does not earn his commission simply by telling one who afterwards purchases that a property is for sale. He does not thereby fence off the whole deal as a private preserve for himself. It remains open range to his competitors, and if another broker is chosen by the customer as the efficient conduit of successful negotiation, the first is simply out of the money. Of course, there must be good faith all around. But it is no evidence of bad faith that the customer, for some undisclosed reason personal to himself, rejects the tendered offers of broker No. 1 and employs those of No. 2."

The evidence suggests that we have here a plaintiff and his employee, Basich, who were professional hotel brokers, dealing with an invalid with an unreliable memory, but who, throughout the trial of the case, contends he always insisted the purchaser had to be acceptable to him. Hare v. Bauer et al., 223 Minn. 285, 26 N.W.2d 359.

 1 Dunnell Digest § 1152 suggests a principle of law germane to the facts of the instant case in these words:

"An owner who has employed a broker to sell his property may himself sell it without becoming liable to the broker for a commission, if he did not give the broker the exclusive right to sell, and does not sell to a purchaser procured by the broker."

Rules and principles notwithstanding, it seems to be sound to conclude that where the principal witnesses, in a fact case such as the one at bar, are so sharply at variance in their recollection and recital of what was said and done by the parties involved, the court must resolve all resulting doubts in favor of the defendant and against the plaintiff, who in my opinion has failed to carry his burden of proof.

Defendant may, upon reasonable notice, submit findings of fact, conclusions of law, and form of judgment consistent herewith.

Plaintiff is allowed an exception.