ALBERT ARMSTRONG *vs.* JOHN WANN.

May 9, 1882.

**Agent to sell Real Estate — Right to Commissions.** — Evidence considered, and *held* not to sustain a claim for commissions by an agent for the sale of real estate, and the general rule as to when such commissions are to be deemed earned stated.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin,* J., presiding, refusing a new trial. The case is stated in the opinion.

*I. V. D. Heard,* for appellant.

The law is fully settled than an agent or broker who is instrumental in procuring a purchaser is entitled to his commission, even where the owner consummated the bargain. Ewell's Evans on Agency, 457; Story on Agency, § 329, note 6 and § 331; *Kimberly* v. *Henderson,* 29 Md. 512; *Keener* v. *Harrod,* 2 Md. 63; *Murray* v. *Curry,* 7 C. & P. 584; *Burnett* v. *Bouch,* 9 C. & P. 620; *Schwartze* v. *Yearly,* 31 Md. 270; *Chilton* v. *Butler,* 1 E. D. Smith, 150; *Redfield* v. *Tegg,* 38 N. Y. 212; *Briggs* v. *Rowe,* 43 N. Y. 424; *Hanford* v. *Shapter,* 4 Daly, 243; *Bidwell* v. *Weeks,* 2 Hilton, 106; *Lloyd* v. *Matthews,* 51 N. Y. 124; *Martin* v. *Selliman,* 53 N. Y 615; *Sussdorff* v. *Schmidt,* 55 N. Y. 19; *Lincoln* v. *McClatchie,* 36 Conn. 136.

*Bigelow, Flandrau & Squires,* for respondent.

GILFILLAN, C. J.   The action is to recover compensation or commissions claimed to have been earned by plaintiff in the sale of real estate for defendant.   On the trial, plaintiff testified that defendant placed the real estate in his hands for sale, and was to pay him a commission of 5 per cent. on the price of the property claimed to have been sold, "if I effected a sale," and "he [defendant] might effect a sale if I produced a purchaser, and he would pay me my commissions."   As to what was done to earn the commissions, the testimony of plaintiff and his witnesses makes out this state of facts: Plaintiff called the attention of one Keigher to the property, and was endeavoring to persuade him to buy.   Afterwards Keigher called the atten-

tion of one King to the property, and the two carried on negotiations with plaintiff on the subject—the two contemplating a purchase together; King saying he would buy if Keigher would. After the negotiations had continued about a month, Keigher finally declined to buy. It does not appear that plaintiff had any negotiations at any time with King with respect to a separate purchase by him. Plaintiff testified that the last conversation he had with King about the matter was in November or December—two or three months after the declination of Keigher. What the conversation was—whether an endeavor to renew the negotiations for a purchase by Keigher and King, or to open negotiations for a purchase by King alone—does not appear; and it does not appear that he had any other conversation with him after the close of the negotiations with him and Keigher. In November, (between two and three months after the close of plaintiff's negotiations with King and Keigher,) King casually met defendant, and asked him what he would sell the property for. Defendant answered, $300 an acre. King offered $200 an acre, and the two separated. About two months after this they met again casually, as appears, when, after some conversation, King offered $250 an acre, (the price at which plaintiff was authorized to sell, and at which he had offered it to King and Keigher,) and defendant accepted the offer and made the sale. Aside from certain conclusions stated by plaintiff,—as, "I produced a purchaser; that is, Mr. King;" and "I think I consummated a bargain with Mr. King,"—which, upon the whole evidence as presented, were not entitled to be considered, the evidence did not tend to show any other facts than those above stated. When plaintiff's evidence closed, the court dismissed the action.

The defendant not having given plaintiff the exclusive right to sell, he could make a sale himself. But if he sold to a purchaser procured by plaintiff, he would then be liable to plaintiff for the commissions. All that plaintiff had to do, to be entitled to his commissions, was to procure a purchaser ready and willing to buy upon his employer's terms. If he did so, it would make no difference that the employer made the bargain with the purchaser. Plaintiff, however, must have been the procuring cause of the sale. It must have been the result of the means and efforts employed by him; must have pro-

ceeded from those means and efforts. *Murray* v. *Curry*, 7 C. & P. 584; *Wilkinson* v. *Martin*, 8 C. &. P. 1; *Hungerford* v. *Hicks*, 39 Conn. 259; *Gillespie* v. *Wilder*, 99 Mass. 179; *Tombs* v. *Alexander*, 101 Mass. 255; *Earp* v. *Cummins*, 54 Pa. St. 394; *Lyon* v. *Mitchell*, 36 N. Y. 235; *McClave* v. *Paine*, 49 N. Y. 561; *Lloyd* v. *Matthews*, 51 N. Y. 124; *Chandler* v. *Sutton*, 5 Daly, 112; *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 415.

As plaintiff made no bargain with King, and did not, in the negotiation he had with him and Keigher, bring him to consent to buy, and was not, during the four months after that negotiation ended, carrying on any negotiations with him, nor using any efforts with him to induce him to buy, he was not the procuring cause of the sale, unless it can be assumed that, because of what occurred in the unsuccessful negotiation, King made defendant the offer which was accepted. This cannot be assumed; it is not indicated by the evidence. The fair inference is that, after the failure of that negotiation, King, either from something subsequently occurring or from something occurring between him and defendant, concluded to buy. The dismissal was correct.

Order affirmed.