LOUIS A. HUBACHEK v. ELIZABETH M. HAZZARD and Another.[1]

| 83 | 437 |
|---|---|
| d84 | 525 |

June 7, 1901.

Nos. 12,634—(129).

**Broker's Commission.**

A real-estate broker has earned his commission, if he is the means of procuring a purchaser ready and willing to buy upon terms acceptable to the owner.

**Sale by Owner at Lower Price.**

If the agent is the procuring cause, the owner cannot sell at a less figure than that named to the agent, thereby escaping liability for the commission.

**Charge to Jury.**

Certain instructions to the jury and rulings of the court considered, and found to contain no error.

Action in the district court for Hennepin county to recover $225, broker's commission, claimed to have been earned by A. W. Daniels for procuring a purchaser of defendant's real estate. Daniels assigned his claim to plaintiff. The case was tried before Pond, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*W. F. Booth,* for appellants.

*Welch, Hayne & Hubachek,* for respondent.

LEWIS, J.

Defendants were the owners of a house and lot in Minneapolis, and placed the same in the hands of one Daniels, a real-estate man, for sale, at the price of $8,500, his commission to be $300, but the agency was not exclusive. On March 4, 1900, Daniels advertised the property for sale in the daily papers of Minneapolis at the sum of $8,250. Mr. H. C. Clark, of Minneapolis, saw this advertisement, cut it out of the paper, and pinned it to a letter, which he that day wrote to his broker, Walton, as follows:

[1] Reported in 86 N. W. 426.

"I will give $6,000 cash, and my house furnished, for 1719 Park Ave. See what you can do with this, please."

To this was added the postscript:

"Sodine, the variety theater man, is the owner, I heard."

On March 5, Walton answered this letter, stating that the house belonged to C. D. Hazzard, of California, and that he had written the advertiser to come and see him. On the day following Walton again wrote Clark, to the effect that he had seen the agent for the house, and that $8,250 was the very best price obtainable; that Sodine had offered $8,000 for it, and been refused; that he considers it a bargain, and advises Clark to look into the matter at once. Clark thereupon immediately entered upon negotiations with the owners, and purchased the property direct for $8,000 cash.

1. The only question submitted to the jury was, did Clark, after he made his offer through Walton to Daniels, drop the matter, and subsequently, of his own motion, as an independent deal and a new proposition, take it up direct with the owners? Or were the negotiations continuous from the time Clark made the offer to Daniels through his broker, up to the time he purchased the property from Hazzard? No serious claim is made that Mr. Clark and the owners of the property were engaged in negotiations for its sale and purchase at the time of Clark's communication with Daniels, and the fact that Clark and Hazzard had for a number of years been talking about it, and that offers had been made back and forth, at different times, did not tend to show that negotiations were pending between them at the time Daniels advertised the property. Conceding, then, that Clark's attention was called to the property by means of Daniels' advertisement, and that he followed it up with an offer to the agent to buy, the court was correct in submitting to the jury the question as above stated.

Appellants insist that, because Clark did not buy the property at the price offered by the agent, the owner was at liberty to sell the same at a lower figure, thereby avoiding the agent's commis-

sion. Such, however, is not the law. We do not find that this precise question has been passed by this court, but the principle involved in this case is recognized in Armstrong v. Wann, 29 Minn. 126, 12 N. W. 345, where the proposition is stated as follows:

"All that plaintiff had to do, to be entitled to his commissions was to procure a purchaser ready and willing to buy upon his employer's terms. If he did so, it would make no difference that the employer made the bargain with the purchaser. Plaintiff, however, must have been the procuring cause of the sale. It must have been the result of the means and efforts employed by him; must have proceeded from those means and efforts."

By the words, "upon his employer's terms," the court means terms acceptable to the employer, not necessarily those named to the agent. The same principle is recognized in the case of Putnam v. How, 39 Minn. 363, 40 N. W. 258, in the following language taken from the opinion:

"Had Verrill bought the farm at his first meeting with defendant, either on the terms first asked by defendant or upon an agreed departure from those terms, as by his paying for it in part with the lot, the connection between the acts of the plaintiffs and the purchase would have been apparent, and they might claim to have procured a purchaser."

The essential thing is that the agent must be the procuring cause of the sale. While the record does not show the exact figures at which Hazzard offered the property to Clark prior to his placing it in the hands of Daniels, it is to be inferred that the price was too high for Clark's consideration, and it appears that when Daniels' advertisement was published, offering it at $8,250, Walton, Clark's broker, was attracted by the price as especially low, and called Clark's attention to it, recommending the purchase.

The evidence reasonably tends to support the position taken by respondent, that the sale was effected through his agency as its procuring cause, resulting from his advertisement. It cannot matter, therefore, that Clark ultimately succeeded in buying the property from Hazzard at $250 less than the figure quoted by the

agent. The owner knew that Clark came to him through the instrumentality of Daniels, and he was informed by Clark that a commission would be due Daniels if the sale was consummated at $8,000, and revealed his sense of obligation to Daniels by insisting upon reimbursing him for the expense incurred in advertising.

The point which appellants seem to insist upon is that, because Clark refused to pay $8,250, the agent's figures, the owner was at liberty to sell for $8,000, without liability for his agent's commission. But the various decisions of this court have established the rule that, if an agent is instrumental in bringing together a proposed purchaser and seller, the fact that the owner himself made the sale would not release him from his responsibility to the agent for his commission as the procuring cause. While the identical question presented here is not raised in those cases, yet there can be no distinction for the underlying principle is the same. It is immaterial whether the owner sold at the same price or at a lower figure than given to the agent, for the agent might still remain the efficient cause of bringing the parties together. The case would present an entirely different aspect if the owner had refused to deal with the purchaser at the time in question, had dropped all proceedings connected with it, and afterwards, through some other source or from some other cause, negotiations were opened anew. In such case, the agent would not be the procuring cause or instrumental in bringing the parties together. Upon this question may be cited Wilkinson v. Martin, 8 Car. & P. 1; Murray v. Currie, 7 Car. & P. 584; Earp v. Cummins, 54 Pa. St. 394; Martin v. Silliman, 53 N. Y. 615.

2. Exception was taken to certain language used by the court in charging the jury, as follows:

"If you find that, after Clark's offer through Walton had been rejected, he (Clark) thereupon opened and continued negotiations for the purchase of this property with the defendants, all the time intending to purchase in case he could get satisfactory terms, then the negotiations may be said to have been continuous, and you will be justified in that case in finding that Daniels was the primary cause, or primarily instrumental, in bringing the owners of the property and this purchaser together, and, of course, in that event, he will be entitled to recover the commission in question."

We find no error in this instruction, when considered in connection with the charge in its entirety.

3. The following question was asked of the witness Clark by defendants' attorney:

"Had you had in mind continuously, for a number of years, Mr. Clark, the purchasing of 1719 Park Ave., the premises in question, in case they could be obtained by you at the figures you desired to pay for them?"

There are two reasons why this is not a proper question: First, because it calls for a conclusion of the witness, rather than for the facts from which a conclusion could be drawn as to what his intention was; and, second, because it was immaterial what Mr. Clark may have had in mind. As before stated, no serious claim is made that Mr. Clark and the property owners were engaged in negotiations for its sale and purchase at the time Clark communicated with Daniels. The conclusion of the jury that the negotiations were continuous from the time Clark and Hazzard were brought together by means of the agent's advertisement is fully sustained by the evidence.

Order affirmed.