# Z. H. AUSTIN v. NATIONAL CASUALTY COMPANY.[1]

May 15, 1914.

Nos. 18,429—(54).

**Contract for services — breach — evidence.**

Plaintiff entered a contract with defendant, a casualty insurance company, to bring about the consolidation and reinsurance of another similar insurance company called the Globe Co. and secure the approval of the insurance commission thereto, under section 3519, G. S. 1913, for a consideration equal to a stated percentage of the amount of the net surplus or assets received from the Globe Co. by defendant in such consolidation. Plaintiff sues for the stipulated compensation on the ground that defendant wrongfully prevented him from carrying out his contract in that, when he had done all the work, except securing the approval of the insurance commission, he was discharged, and also in that defendant proposed to the commission to exchange the greater part of the surplus for free or extended insurance to the Globe Co. policyholders. It is *held:*

(1) Conceding that the Globe policyholders had no right to receive a distribution of the surplus, it was nevertheless the duty of the insurance commission before it approved the consolidation to direct the disposal thereof in the interest of the policyholders of the two companies concerned and to see that the surplus did not disappear. And since plaintiff could not secure the approval of the commission to the plan he agreed to put through, he cannot recover as for performance.

(2) That defendant, when it understood that the original plan would not be approved, in answer to an inquiry of a member of the commission, indicated a willingness to give eight months' free or extended insurance to the Globe Co. policyholders, was not a modification of plaintiff's employment contract so as to give a right of recovery, provided the jury found that the commission would have approved the new plan. The jury had a right to find that the free or extended insurance proposed was only tentative on defendant's part, and that in making it there was no wrongful interference with

[1] Reported in 147 N. W. 281.

Note.—The general question of the remedy of a wrongfully discharged servant by action for damages for breach of contract is discussed in an extensive note in 6 L.R.A. (N.S.) · 50.

plaintiff's employment. And the court was right in leaving this issue to the jury and in refusing defendant's requested instruction to the contrary.

(3) No reversible error was made in admitting or rejecting evidence.

Action in the district court for Hennepin county to recover $6,500 for services performed for defendant at its request. The case was tried before Dickinson, J., who at the close of plaintiff's case denied defendant's motion for a directed verdict and a jury which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*A. B. Jackson* and *A. M. Higgins,* for appellant.

*H. L. Hoidale* and *Henry C. Walters,* for respondent.

HOLT, J.

Prior to August 15, 1910, defendant was, and still is doing an insurance business of the nature indicated by its name. It is a Michigan corporation authorized to do business in this state. On the date mentioned the Globe Fraternal Accident Association, hereinafter called the Globe Co. a corporation created under the laws of this state, was doing a similar business, having about 400 members or policyholders. Plaintiff and Mr. Curtis, the president of defendant, conceived a plan to consolidate the Globe Co. with the defendant, or, in other words, have the latter overtake the former, receive all its property and assets and assume all its debts and obligations, including outstanding policies according to the terms and conditions thereof. With that in view, a written contract prepared by plaintiff was executed by both parties to this action. Under the terms of the contract the defendant agreed to employ plaintiff as its special representative to attend all details of the reinsurance proposition then pending between defendant and the Globe Co., and in that matter plaintiff was authorized to appear in behalf of defendant before the commission of insurance of the state of Minnesota or any commission required by law to pass upon matters relating to reinsurance of Minnesota insurance companies, and to prepare and assist in preparing all necessary papers and forms. The contract

was to remain in force until its object was fully consummated. The here important part of the agreement is as follows:

"It is further mutually agreed that when such reinsurance contract by and between the said party of the first part and the said Globe Fraternal Accident Association of Minneapolis, Minnesota, shall have been fully consummated and the said party of the first part shall have come into actual possession and control of all the assets (including vested assets and cash in bank) of the said Globe Fraternal Accident Association, same having been duly and legally transferred and delivered to the said party of the first part by the said Globe Fraternal Accident Association, that then and thereupon, as a consideration for said services, heretofore satisfactorily rendered and now being rendered and hereafter to be rendered as herein specified, and provided, the said National Casualty Company of Detroit, Michigan, party of the first part, shall immediately become indebted to the said Z. H. Austin, party of the second part, in a sum which it is mutually agreed between the parties hereto shall equal $86\frac{2}{3}$ % of the total cash assets transferred and delivered to the said National Casualty Company of Detroit, Michigan, by the Globe Fraternal Accident Association of Minneapolis, Minnesota, under, pursuant to and in consequence of the said proposed reinsurance contract, the said compensation, however, not to exceed the total sum of six thousand five hundred dollars ($6,500.00)."

On August 31, 1910, a modification affecting the amount of the compensation was executed, but since that is not deemed important to a determination of the appeal its terms need not be set out.

Plaintiff proceeded with the undertaking and no obstacle to a consummation thereof arose until the time arrived for the commission of insurance to approve and authorize the consolidation or reinsurance, as provided by section 3519, G. S. 1913. This section provides that the governor or a competent person by him appointed to act in his place, the state insurance commissioner, and the attorney general shall upon due notice at an appointed time and place, hear and determine the petition, and states: "Said commission, if satisfied that the interests of the policyholders of such company or companies are properly protected, and that no reasonable objection exists

thereto, may approve and authorize the proposed consolidation or reinsurance or may modify or change the terms and conditions thereof as may seem best for the interests of the policyholders, and said commission may make such order with reference to the distribution and disposition of the surplus assets of any such company thereafter remaining, as shall be just and equitable to the policyholders. Such consolidation or reinsurance shall only be approved by the consent of all the members of said commission; and it shall be the duty of said commission to guard the interests of the policyholders of any such company or companies proposing to consolidate or reinsure."

This meeting was held October 5, 1910. The commission ascertained that the Globe Co. had then nearly $7,000 in assets after deducting conceded liabilities. The members of the commission refused to approve unless the Globe policyholders should receive the benefit of this surplus. Without reaching any result the meeting adjourned until October 7 for the purpose, as plaintiff contends, of permitting him to show that the surplus was offset by the contingent liabilities in certain Globe policies which defendant was to assume. On the sixth the attorney general telegraphed defendant's president, Mr. Curtis, who had left the state: "Will the National Casualty Company take over the entire assets and business of the Globe Fraternal and give to each member thereof his present insurance without further charge for eight months from the end of period for which he has paid? Wire my expense." The reply was: "We agree to accept business of Globe on basis you propose. Assets and liabilities to show as per department examination." On the same day Mr. Curtis telegraphed plaintiff: "Am convinced commission will insist upon consideration for policyholders any concessions along that line would be deducted from contract with you wire your attitude in the matter to Detroit tonight." The response was: "Will wager commission does not order any consideration to policyholders. You sit tight, I am still here. Will wire results after Friday meeting, if change is made will state attitude then." The next day presumably prior to the meeting of the commission Mr. Curtis telegraphed plaintiff: "Any extended credit for policyholders will be a matter for deducting full premium our rates from commission to be paid

you would prefer to withdraw entirely from negotiations premium estimated to cover period of credit four thousand dollars. Would only agree to make commission any amount in excess of that item plus all other liabilities." The response from plaintiff was: "Your concessions to state board gratuitous unnecessary. They would have approved without such concessions. Will yet or greatly modify demands if you withdraw concessions. Your action without my consent cannot affect my contract. I insist you withdraw concessions state board and proceed on original basis."

At the meeting of the commission on the seventh after being shown the telegrams between Mr. Curtis and the attorney general, plaintiff opposed any consolidation on the basis therein proposed as "unreasonable, unprecedented and a foolish thing to do." And when asked on cross-examination whether he urged the commission to approve the consolidation, upon the proposition contained in the telegrams referred to, plaintiff answered: "No, I couldn't say that I urged it. No, I tried to persuade them to get back on same grounds." Nothing was accomplished at the meeting of the seventh, and the next day Mr. Curtis sent plaintiff a telegram revoking his authority to act. No consolidation was ever effected.

Plaintiff sues alleging the contract; his endeavors to perform; that, while plaintiff was engaged in consummating the deal and while the Globe Co. was ready, willing, and able to carry out the original proposition, defendant revoked the employment; that but for this breach of its contract with plaintiff and its refusal to consummate the deal with the Globe Co. plaintiff would have been able to complete his agreement; that plaintiff was damaged in $6,500; and that the services rendered up to the breach were of that value. From the reply it would seem that the tentative offer to accept the risks of the Globe Co. and allow the policyholders free insurance for eight months is set up as breach of the contract, or the wrongful act of defendant which prevented the original scheme from going through.

As we understand appellant he claims the trial was unfair and the result unjust, because the trial court took a wrong view of two controlling propositions and received evidence and submitted the case to the jury in accord with such erroneous view. The one was,

that the policyholders of the Globe Co. had some legal or equitable interest in the surplus of that company, so that this commission had a right to consider the same in acting on and in approving the consolidation. The other, that notwithstanding the several members of the insurance commission had in fact approved the consolidation on the terms proposed by the attorney general's telegram of October 6, and acquiesced in by Mr. Curtis in behalf of defendant, it was nevertheless incumbent on plaintiff to satisfy the jury that the commissioners would have approved the contract between the two companies, without this acquiescence of Mr. Curtis.

Conceding, but not deciding, that the policyholders of the Globe Co. were not legally or equitably entitled to have distributed to them this surplus, nevertheless, the commission was charged with the duty of its proper disposal. It certainly cannot be claimed that it would be just and equitable to the policyholders of either company to let such surplus go to third parties. None but the members or policyholders of the companies concerned can have any claim whatever thereto. The law does not contemplate that in the consolidation of insurance companies the assets or surplus funds shall be allowed to disappear. This is indicated by section 3520, G. S. 1913, which prohibits any officer of the companies consolidating from reaping any reward for work done in that connection, and which requires the items of the expenses of consolidation to be filed with the insurance commissioner with a certified copy of the decision of the commission. It is one of the duties of this commission to direct the disposition of the surplus of a reinsured company of the kind in question. Whether the commission's view of this surplus or the rights of the policyholders of the Globe Co. therein was right or wrong is beside the question, for unless plaintiff could succeed in putting the commission right so that it would approve a transfer of such surplus into the hands of defendant free from conditions attached, no obligation to pay plaintiff arose under his contract with defendant. The probability of the commission approving the consolidation under the terms of plaintiff's contract of employment had Mr. Curtis not made the response he did make to the attorney general's proposition for advance insurance was fairly submitted to the jury and answered adversely to

plaintiff. We cannot entertain the suggestion that the approval of the commission may be eliminated from the employment contract of plaintiff on the ground that the law is unconstitutional, for counsel concedes that the section may be so construed as not to contravene the Constitution; that being so, such construction must prevail and there is a valid commission whose approval plaintiff undertook to secure.

The second erroneous view which it is claimed the trial court entertained we cannot discover from the record, nor are we certain that we correctly gather its import from the counsel's statement. We do not think this is a case where plaintiff has substantially performed and defendant by its act merely interfered with the condition when payment was to be made. Nor is it a case like Gauthier v. West, 45 Minn. 192, 47 N. W. 656, where the agent for the sale of real estate produced a party willing to buy, but the sale could not be made because the principal had no title to convey, nor like C. H. Graves & Co. v. Cook, 115 Minn. 34, 131 N. W. 854, where the plaintiff, a real-estate agent, was held to have earned his commission when he produced a customer willing, ready and able to purchase upon the terms authorized, although no sale was made and the contract of employment stipulated that the commissions should be paid out of the proceeds of the sale. In the case at bar the consolidation which the parties to this litigation agreed should be brought about was never consummated, nor could it be, because of the attitude of the commission, and defendant never agreed to compensate plaintiff for accomplishing the consolidation which the commission was willing to approve. It is not even as strong a case in plaintiff's favor as Bentley v. Edwards, supra, page 179, 146 N. W. 347. Nor is the instant case like those where an owner authorizes a real-estate agent to sell on certain terms and pay commission and the owner sells to a customer produced by the agent at a reduced price or on different terms. Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426. Where the owner so reduces price or changes terms and makes a sale, the object of the employment is accomplished and the agent is entitled to his pay. Not so here. No consolidation was effected.

We think the learned trial court stated accurately the vital issue

in these words of the charge: "The plaintiff failed to complete the deal, and his claim in this case, as I understand it, is that he did fail solely because of the unwarranted interference, as he claims, on the part of the defendant acting through Mr. Curtis—first, as I recall it, in yielding to any suggestion for extended insurance to the policyholders of the Globe; and then again, later on, I think on October 8th, of totally terminating all the negotiations. Plaintiff's claim—and it is the only ground for his lawsuit—is that he did not succeed by reason of the interference without fault on his part, and if you find that his claim is supported by the preponderance of the evidence in this case, then you should give him a verdict."

Error is assigned upon the court's refusal to give four requested instructions. The first and third were sufficiently covered in the general charge. The second was rightly rejected because it proceeds on the erroneous assumption that the answer of Mr. Curtis to the attorney general's telegram constituted, as between plaintiff and defendant, a modification of the contract of employment, so that, if the commission would have approved reinsurance of the Globe Co.'s risks with defendant for eight months free, plaintiff was entitled to his fee. It is entirely clear from this record that Mr. Curtis' telegram to the attorney general was only a tentative or conditional acceptance of a scheme of consolidation, made upon the supposition that he would be able to make terms with plaintiff so that defendant would in no event be to any expense in the matter. Of course nothing was said of that kind in the telegram to the attorney general, nor was it necessary or perhaps proper, for Mr. Curtis understood that plaintiff insisted that the members of the commission had no business to inquire as to the arrangement between him and defendant, and further a proposal to the Attorney General was not a binding contract upon any one. The fourth request is based upon what we consider an unsound theory that the telegrams between Mr. Curtis and the attorney general obligated defendant to insure the Globe Co. if the insurance commission approved such plan. It is plain that plaintiff himself did not believe this would entitle him to the agreed commission, for he bitterly opposed such consolidation at the meeting of October 7.

Some exceptions to rulings on the admission of evidence are assigned as error. The insurance commission kept no records of its meetings, and we see no force in the objection to a member of the commission testifying as to the conclusion reached in respect to the proposed consolidation. The cross-examination proposing to show that the commission had approved the transfer of surplus funds in other consolidations of insurance companies related to collateral issues, and a certain discretion is allowed the trial court in refusing to open these. Moreover, no prejudicial error appears, for there was no offer to show that in such other consolidations the transfer of the surplus was merely temporary as in the instant case where $86\frac{2}{3}$ per cent was immediately to be paid out to a third party.

We do not think any error was made in receiving evidence upon the attitude or intention of the individual members of the commission in respect to an approval of the consolidation in accordance with the plan plaintiff was employed to carry out. The plan was never approved and whether it ever would be depended upon the frame of mind or view point of the individual members. The jury were to determine what would have been their final decision, and it seems to us no better testimony could be adduced as to that than a statement of the attitude and intention of the one to give such decision. Berkey v. Judd, 22 Minn. 287; 1 Dunnell, Minn. Dig. § 3231. If a party may testify as to intention or state of mind as to a past act, he should also be permitted to do so as to a future act which must depend on his intention or state of mind.

We fail to find reversible error in the record.

Order affirmed.