# H. W. STEAD v. ERIC S. ERICKSON.[1]

February 6, 1931.

No. 28,188.

*Duxbury & Duxbury* and *A. E. Sheridan,* for appellant.
*David A. McVeety,* for respondent.

HOLT, J.

In this action to recover the agreed commission for the sale of defendant's farm of 240 acres plaintiff had a verdict, and defendant appeals from the judgment entered thereon.

[1]Reported in 234 N. W. 678.

470

On July 5, 1927, plaintiff, a real estate agent or broker, for the named consideration of one dollar secured from defendant a written contract appointing plaintiff "exclusive agent to make sale" of defendant's farm in Fillmore county for $125 an acre, $1,000 down, $10,000 cash March 1, and balance secured by mortgage for ten years at five per cent. The contract provided for a commission of one dollar per acre on the sale price of $125 per acre; "and 40 per cent of all of the consideration for which said property is sold over and above price above specified, and in case said property is sold within said time either through me or any other person, then in that case I promise to pay you above $1.00 per acre and 50 per cent as par [per] above on the whole amount for which said property may be sold. This contract to continue until Sept. 15, 1927, and thereafter until terminated by my giving unto you as agent 30 days notice in writing."

The answer admitted that defendant sold the farm to one Kiehne on October 18, 1927, for a price of $130 per acre, but alleged that as part payment he accepted a small farm, which he has since sold for $10,000, and that he has been paid only a part of that sum and only a part of the balance of the $130 an acre; and set up two defenses: First, that the written agency contract was obtained by plaintiff's fraudulently misrepresenting that it terminated absolutely on September 15, 1927, as it was orally agreed; and second, that the contract was terminated and canceled by agreement of the parties on or about September 1, 1927.

There was no motion for a directed verdict. There was a motion for a new trial, in which the verdict was assailed as unsupported and it is challenged here. But the jury having found·that no fraud or deceit was practiced in obtaining defendant's signature to the contract, the here important parts of which are above set out, it cannot be successfully maintained that the verdict is without support as the issues were submitted by the court. The contract as written, together with the admissions in the answer of a sale, gave plaintiff a right to a commission. In the deal with Kiehne the farm was priced at $130 per acre, and the answer admits the

amount realized is at least $29,715, though not all has yet been paid. No defense was sought to be made on the ground that the sale was not on the same terms as plaintiff was authorized to make. And we are of opinion that under the terms of this agency, if plaintiff was the procuring cause of the sale by securing the buyer Kiehne, he is entitled to his commission though defendant made the sale for a price or terms different from those in the agency contract. Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; Jaeger v. Glover, 89 Minn. 490, 95 N. W. 311; MacGregor v. Persha, 174 Minn. 127, 218 N. W. 462. In Austin v. National Cas. Co. 125 Minn. 390, 396, 147 N. W. 281, it was said:

"Where the owner so reduces price or changes terms and makes a sale, the object of the employment is accomplished and the agent is entitled to his pay."

Especially is that so when the reduced sale price is such as entitles the agent to some commission under the terms of the employment.

The more serious proposition is the error assigned upon the omission of the court to submit to the jury the defense of the termination of the agency by mutual agreement on or about September 1, 1927. The only testimony touching a termination is given by defendant. He testified that the last days of August he and plaintiff drove out to the farm to get the tenant, Holger, to hold off plowing until the 15th of September so that defendant would not get in trouble with regard thereto should a buyer be procured before that date. Holger was not at home, and defendant was asked:

"What happened then?

A. "I went up to the car to Stead, and I said, 'Holger is gone,' and that I will stay around and see what we can do. And he said: 'I was out in Bristol and Wesley [Jones] gave up the deal, and I cannot sell the farm, and so we will drop the whole thing.' That is the words."

Plaintiff did not attempt to deny or contradict this testimony. It also plausibly may be urged that from plaintiff's subsequent conduct the inference is permissible that he deemed the agency contract terminated and canceled; for after he failed to induce Wesley Jones to purchase he admittedly made no effort to make a sale or seek a purchaser, except that in the latter part of September, when Kiehne applied to plaintiff for a loan upon a large farm he then contemplated buying and incidentally voiced his objection to its size, plaintiff suggested his buying defendant's. Kiehne thought favorably of the suggestion provided he could trade in his 95-acre farm. Plaintiff expressed a doubt that defendant would consider a trade but promised to write him. He never wrote defendant and never communicated with Kiehne, who was expecting word from plaintiff. When Kiehne had waited for two weeks without hearing from plaintiff, he drove to defendant's home and bought the farm as stated. It seems to us the conduct of plaintiff in connection with the quoted testimony of defendant made the termination of the agency about September 1, 1927, a jury issue, and that the court erred in omitting to submit it. It may be said that defendant's conduct after September 1 contradicts his claim that the agency was then terminated, for on October 15 he declared to Kiehne that the contract ended September 15, 1927. But with that we think it was for the jury to determine whether the agency was ended by mutual agreement on September 1, 1927.

There are quite a number of errors assigned upon rulings made upon the reception and exclusion of evidence. We find no ruling which merits comment, unless it be the one excluding evidence as to the value of the small farm defendant accepted in the deal. But since defendant in his testimony admitted that he and Kiehne agreed on the price of $130 per acre on the farm defendant conveyed and $125 per acre on the farm deeded to him, the actual market value of either was of no consequence so far as concerns the amount of plaintiff's commission. Defendant, knowing what the agency contract was, according to the jury's finding, saw fit to fix the selling price of the farm at $130 per acre and obtained what he regarded

equivalent thereto in the small farm and the agreed amount to boot, and should now pay the commission computed on the price he voluntarily fixed.

Defendant makes the point that plaintiff, being only an exclusive agent to sell the farm, had not the exclusive right to sell; hence defendant could himself sell without incurring any obligation to pay plaintiff commission, and cites Armstrong v. Wann, 29 Minn. 126, 12 N. W. 345, and all the cases from other jurisdictions therein cited; Baars v. Hyland, 65 Minn. 150, 67 N. W. 1148; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Smith v. Preiss, 117 Minn. 392, 136 N. W. 7, Ann. Cas. 1913D, 820. And so defendant could, but for the express provision in the contract that commission should be paid if during plaintiff's agency the farm was sold by defendant "or any other person," which brings the case within the rule of Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426.

It is likely that the court erred when holding that as to the sale price above $125 per acre plaintiff was entitled to 40 per cent if he made the sale and 50 per cent if defendant or any other person made it. We think when the parties agreed to reduce the commission from 50 per cent to 40 per cent it was intended to change the figures in both places where percentages occurred and not in one only, and that it was a mere clerical error by which the last percentage numeral was left at 50. But this error, if it be such, could reduce the verdict only to what it now is, and defendant was not prejudiced thereby.

For the error in not submitting the defense of termination of the agency there must be a new trial.

The judgment is reversed.