JOSEPH MESTER v. WILLIAM CLEMENT FRITZE
AND ANOTHER.

121 N. W. (2d) 335.

April 19, 1963—No. 38,766.

*Altman, Geraghty & Mulally* and *Kenneth M. Schadeck,* for appellants.

*E. C. Mogren,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries and property damage arising out of an automobile accident. The jury returned a verdict in plaintiff's favor in the sum of $10,000, which was subsequently reduced to $8,000 by the trial court. This is an appeal by defendant from an order denying his motion for a new trial on the grounds that (1) the verdict even as reduced was excessive; and (2) the trial court erred in certain of its instructions to the jury.

The facts are as follows: The accident occurred February 20, 1960, about 10:30 p. m. at the intersection of Payne and Maryland Avenues in St. Paul, where electric semaphore signals control traffic. Plaintiff was then driving his automobile on Maryland Avenue, approaching the intersection from the east, while defendant Daniel Nelson Fritze was driving an automobile belonging to his father, defendant William Clement Fritze, on Payne Avenue, approaching the intersection from the south.[1] Conflicting evidence was presented as to which of the parties was favored by the semaphore signal light as he entered the intersection. As they proceeded, plaintiff's automobile was struck on its left side by the automobile which defendant was driving. As a result, plaintiff's nose commenced to bleed. Thereafter he was hospitalized for a period of 10 days and upon advice of his physician then remained at home for about a month.

He testified that as a result of the accident he experienced severe headaches, mental confusion, and a partial loss of memory which had continued until some 3 or 4 months before trial.

Plaintiff's wife, Mrs. Helen Mester, testified that immediately after

---

[1] References to "defendant" here are to Daniel Nelson Fritze, the driver of the Fritze automobile.

the accident plaintiff's face had become swollen on the left side; that while in the hospital he had been confused; that after leaving the hospital he had remained at home for some time; and that since the accident his personality has completely changed and he has become moody, inactive, and reluctant to visit places he frequently visited before the accident.

Dr. Louis L. Flynn, an M. D. specializing in psychiatry, testified that he examined plaintiff while he was in the hospital; that plaintiff was then required to exercise great concentration and effort in his mental reactions; that his facial muscles gave the appearance of paralysis of the 7th nerve thereof; that his tongue protruded or extended to the left side of his mouth with a resulting slurring of his speech; that he probably had a postconcussion syndrome; and that there was some localized brain damage indicating that a subdural hematoma might develop. He expressed the opinion that plaintiff had evidenced no intent to deceive or malinger and did not appear to dramatize or exaggerate his symptoms in any way.

Dr. Zondal R. Miller, specializing in neurology and psychiatry, examined plaintiff on March 10, 1960, about 2½ weeks after the accident. He testified that at that time plaintiff had stated that he felt fairly well and wished to return to work; that his memory as to dates, time, and recent events was not good; that the witness noticed a mild asymmetry or difference in the size of the pupils and an asymmetry of the facial muscles; that such symptoms, as well as an electroencephalogram, caused him to conclude that plaintiff had suffered a brain concussion in the accident with resultant lessening of the normal activity of his front leads mostly on the right side and with a temporary paralysis of brain function. It was his opinion that the nosebleed which plaintiff suffered immediately after the accident was indicative that plaintiff could have sustained a basal skull fracture; and that the asymmetry of the facial muscles indicated that he could have suffered some brain injury. In his opinion plaintiff had received an injury which resulted in a concussion with the possibility of a subdural hematoma.

Defendant presented no medical testimony in opposition to the foregoing. Plaintiff's medical expenses amounted to $413; he lost approxi-

mately $416 in wages during his absence from work as a result of the accident; and the damages to his car were approximately $300. As reduced by the court, the verdict for his general damages accordingly was the sum of $6,871.

Defendant asserts that the trial court erred in its instructions by stressing the method of operation of the semaphore signals which controlled the intersection where the accident happened. Plaintiff had testified that as he approached the intersection the red light had turned to green, indicating that he might proceed. Defendant testified that as he entered the intersection, and until the time of the collision, the semaphore facing him still continued to show green. In its charge to the jury, the court stated:

"* * * Now, on each corner there is a semaphore which turns from green to yellow or amber to red, and from the red—when the red sign is exhibited, it turns immediately to green or go."

On two other occasions in the instructions the court gave similar information to the jury. It is defendant's contention that the repetition of such instructions might have led the jury to conclude that the court gave greater credence to plaintiff's testimony that the signals were in his favor than to defendant's testimony to the opposite effect.

Defendant further complains that the trial court erred in charging the jury as follows:

"* * * There is no claim here that the plaintiff was permanently injured; * * * but he does claim that he suffered for a long period of time and still has headaches and dizzy spells and loss of memory. You would have a right in view of the fact that he is still troubled that way up until this time, when the accident happened in 1959, to assume—or to assess damages up until now and in the very near future, not to say extended, but in the near future for the pain and suffering or loss of memory or dizziness, or whatever he might suffer, but not permanent injury * * *."

Defendant contends that such instructions were not supported by the evidence, which established that plaintiff's headaches had discontinued some 3 or 4 months before trial.

At the close of the instructions, the court asked respective counsel if either of them wished to take exceptions or request any corrections with respect thereto. Each replied in the negative and indicated satisfaction with the charge as given. In defendant's subsequent motion for a new trial, the errors claimed as a basis therefor included the following:

"The Court erred in its charge to the jury in that it placed undue emphasis on the facts as testified to by the plaintiff."

"The Court erred in instructing the jury in regard to the general damages of the plaintiff as follows: [Here follows a recitation of the court's instructions with reference to general damages as above set forth.]"

■ In our opinion the evidence as to plaintiff's injuries and general damages was sufficient to sustain the final award of $6,871 therefor, particularly when the reduced purchasing power of money is considered. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Eichten v. Central Minn. Co-op. Power Assn. 224 Minn. 180, 28 N. W. (2d) 862. As has frequently been stated, to warrant setting aside a verdict for injuries as excessive, it must appear that such verdict was so exorbitant and excessive as to indicate a complete lack of fairness and justice on the part of the jury. Larson v. Degner, 248 Minn. 59, 67, 78 N. W. (2d) 333, 339; Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793. Viewed in this light, we must hold that, since the final result here does not indicate an award which in any measure exceeds the bounds of reason and commonsense, it should not be disturbed by this court.

■ In our judgment the trial court's instructions to the jury as to the mode of operation of intersectional semaphore signals did not place undue emphasis on plaintiff's theory of the case. There can be little doubt but that the average juror is well aware of the mode of operation of such signals and the instructions were not inconsistent with either plaintiff's or defendant's theory of the case. Plaintiff testified that the light had changed as he approached the intersection and was green as he entered it so as to give him the right-of-way. Defendant testified that the signal light was green as he entered the intersection and continued to show green until the time of the impact. At the trial both par-

ties were satisfied with the instructions on the operation of the semaphore signal, and no claim was then made that such instructions favored plaintiff. No fundamental legal principles were involved therein, and in view of defendant's failure to except to them at the trial and the generality of the assignments of error set forth in his motion for new trial, we must conclude that there was no error therein sufficient to justify a new trial. Rules 51, 59.01(7), and 61 of Rules of Civil Procedure; Olson v. Penkert, 252 Minn. 334, 90 N. W. (2d) 193; Peterson v. Lang, 239 Minn. 319, 58 N. W. (2d) 609.

■ With respect to the court's instructions as to the injuries sustained by plaintiff, we find evidence adequate to support all such instructions with the possible exception of those relating to the period during which plaintiff suffered from headaches. As noted above, the court instructed the jury that plaintiff's headaches had continued up to the time of trial. There was testimony that following the accident he had suffered headaches, dizziness, and loss of memory, continuing almost up until the time of trial. With respect to his headaches, he testified as follows:

"Q. How long would you say it was since you had a headache?
"A. I didn't have any now for about three, four months at least.
"Q. Well, did the headaches lessen in severity after six months?
"A. Yes.

        *    *    *    *    *

"Q. But for the last three or four months you haven't had any?
"A. No, I didn't."

We think the court's slight error as to the duration of plaintiff's disabilities is not serious enough to warrant a new trial. The accident happened February 20, 1960, and the trial commenced March 7, 1962. From plaintiff's testimony the jury was entitled to believe that his disabilities had continued for some 21 months after the accident. The additional 3 or 4 months before trial, during which he did not suffer from them, would make any error in the instructions in this respect too trivial to warrant a new trial, particularly where the court definitely charged the jury that "[t]here is no claim here that the plaintiff was permanently injured." We have often held that, where an error in instruc-

248

tions may have led a jury to return a larger verdict than the evidence warranted, and the trial court has reduced the verdict in a subsequent order, such procedure may be considered as sufficient to rectify the error described. 14 Dunnell, Dig. (3 ed.) § 7176; Hackenjos v. Kemper Chevrolet Co. 193 Minn. 37, 257 N. W. 518, 258 N. W. 433. See, Stead v. Erickson, 182 Minn. 469, 234 N. W. 678; Ball v. Gessner, 185 Minn. 105, 240 N. W. 100.

Affirmed.